**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS BARNDT,** | : | **CIVIL NO. 3:09-CV-1790** |
| | : | |
| **Plaintiff,** | : | **(Judge Caldwell)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.  Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by Thomas Barndt, a state inmate who was previously housed at SCI Dallas. (Doc. 47)  Barndt has filed a complaint, which he amended on June 21, 2010, which initially named some sixteen correctional and prison medical staff as defendants. (Id.)

The thrust of Barndt's amended complaint related to medical treatment he received in prison. In his amended complaint, Barndt alleged that he suffers from a host of maladies including Hepatitis C, an enlarged prostate and a hernia.  Barndt then claimed that the various defendants' "deliberate indifference to plaintiff's serious medical needs violated plaintiff's rights, and constituted cruel and unusual punishment under the 8th and 14th amendments of the U.S. Constitution and plaintiff is entitled to relief." (Id.)  Specifically, according to Barndt, "[t]he PA DOC has refused to give

Plaintiff Interferon and riberin Treatment for his 14 to 25 yr. old HEPATITUS [sic] C VIRUS since 1991 BY MAKING EXCUSES THAT HAVE NO VALIDITY. HEPATITUS [sic] C causes damage to Plaintiff's Liver and daily fatigue which makes Plaintiff sleep all night and most of morning.[The defendants] know[] about my serious needs and ha[ve] failed to respond reasonably to it. HEPATITUS [sic]C affects Plaintiff's daily activities because of the fatigue.  Plaintiff has lost muscle mass and his gallbladder because of the Hepatitis [sic] C virus.  A reasonable doctor or patient would consider Hepatitis [sic] C very worhty [sic] worthy of treatment." (Id.)(capitalization in original.)  In particular, with respect to medical staff, Barndt alleged that health care providers violated his Eighth Amendment right to be free from cruel and unusual punishment, by displaying deliberate indifference to his serious medical needs.

While the focus of his complaint was on medical issues, Barndt also named 11 corrections defendants in his amended complaint, including defendant Leskowsky. These 11 defendants included the Department of Corrections; the Secretary of the Department, Jeffrey Beard; along with seven correctional supervisors, including Leskowsky, whose only alleged wrongdoing consisted of failing to favorably respond to prior grievances lodged by Barndt.

At the outset of this litigation, the corrections defendants moved to dismiss this lawsuit. (Doc. 56)  This motion was then granted with respect to all of the corrections defendants, with the exception of defendant Leskowsky, who was both a corrections employee and a registered nurse, and as to whom there were disputed factual issues which precluded dismissal of this action at the outset of this litigation. (Doc. 92)

On June 27, 2011, as discovery drew to a close, defendant Leskowsky filed a motion for summary judgment in this matter, (Doc. 127), alleging that there were no genuine issues as to any material fact, and that reasserting his claim he was entitled to judgment as a matter of law in this case.  In connection with this motion, Leskowsky has filed a statement of material facts, (Doc. 129), which discloses that Leskowsky, a Registered Nurse Supervisor, was employed with the Department of Corrections. (Id. ¶ 2.)  On occasion, Leskowsky would also assume the duties of acting Chief Healthcare Administrator. (Id., ¶3.)  In this capacity Leskowsky would provide initial responses to inmate grievances. (Id.)

Leskowsky has never supervised or otherwise participated in the treatment decisions of Barndt's treating physicians. (Id., ¶14. )  Leskowsky has never rendered any medical care to Barndt, nor has he had any substantive role in Barndt's medical treatment.(Id., ¶3.) Moreover,  Leskowsky is not a physician, and, therefore, lacks the

credentials and authority to diagnose medical conditions, to prescribe courses of treatment, or to overrule the medical decisions of Barndt's treating physicians. (Id., ¶13.)

Instead, Leskowsky's only involvement in this case was that he provided a first-level response to some of Barndt's grievances related to medical care. (Id., ¶5.) To respond to Barndt's grievances, Leskowsky consulted Barndt's medical records and conferred with Barndt's treating physicians in order to ensure that Barndt was receiving appropriate medical treatment. In the course of these reviews Leskowsky never became aware of any serious risk to Barndt's health or safety for which Barndt was not receiving appropriate medical treatment. (Id., ¶¶11 and 12.)

Specifically, Leskowsky responded to three of Brandt's grievances. First, on August 14, 2007, Barndt filed a grievance in which requested to be able to take a shower in the infirmary, claiming that his hernia made it difficult for him to ascend the stairs. On August 21, 2007, defendant Leskowsky responded to this grievance, indicating that medical staff did not feel it would be appropriate for Barndt to shower in the infirmary. (Id., ¶¶5 and 6.)

Four months later, on December 16, 2008, Barndt filed another grievance in which he complained that he was not receiving treatment for his Hepatitis C and that the medical department had refused to give him operations for an inguinal hernia and an enlarged prostate. Leskowsky responded to this grievance on December 23, 2008, and advised Barndt that he was in the preliminary stages of receiving Hepatitis C

treatment and that he was being treated for his hernia.  Leskowsky also advised Barndt that surgical procedures need to be ordered by a physician, and that no physician had ordered Barndt to undergo any such surgical procedures. (Id., ¶¶7 and 8.)

Finally on May 12, 2009, Barndt filed a grievance in which  he complained about the cancellation of his Hepatitis C treatment.  Leskowsky responded to this grievance on May 19, 2009.  Leskowsky's response indicated that the main medication used to treat Hepatitis C can cause mental health issues, and that Barndt's psychiatrist had not cleared Barndt to receive this medication, due to Barndt's existing mental health issues. (Id., ¶¶9 and 10.)

On the basis of these uncontested facts, defendant Leskowsky asserted that he is entitled to a judgment in his favor as a matter of law, Brandt has not responded to this summary judgment motion in any fashion.  Indeed, despite our June 28, 2011 order directing Brandt to respond to this motion, (Doc. 136), presently the time for filing a response  has now lapsed without any action on Barndt's part to address this particular motion.  Therefore, this motion is now ripe for resolution.  For the reasons set forth below it is recommended that this motion for summary judgment be granted.

### III.   Discussion

#### A.   Under The Rules of This Court These Motions for Summary Judgment Should Be Deemed Unopposed and Granted

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion, since Barndt has failed to timely oppose the motion, or otherwise litigate this case as to defendant Leskowsky, despite being instructed to reply to the motion. This procedural default frustrates and impedes efforts to resolve this matter as to this particular defendant in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion shall file a responsive brief, together with any opposing affidavits, deposition transcripts or other documents, within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. Any respondent who fails to comply with this rule shall be deemed not to oppose such motion.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v.

_Mazurkiewicz_, 951 F.2d 29, 30 (1991)." _Williams v. Lebanon Farms Disposal, Inc._,

No. 09-1704,  2010 WL 3703808, *1 (M.D.Pa. Aug.26, 2010).  In this case, Brandt

has not complied with the rule, or this Court's order, by filing a timely response to this

particular summary judgment motion.  Therefore, Barndt's procedural default compels

the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. _See_
> Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve
> cases on their merits whenever possible. However, justice also requires
> that the merits of a particular dispute be placed before the court in a
> timely fashion ...." _McCurdy v. American Bd. of Plastic Surgery_, 157
> F.3d 191, 197 (3d Cir.1998)

_Lease v. Fishel_,  712 F.Supp.2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we recognize a fundamental guiding tenet of our

legal system.  A failure on our part to enforce compliance with the rules, and impose

the sanctions mandated by those rules when the rules are repeatedly breached, "would

actually violate the dual mandate which guides this Court and motivates our system

of justice: 'that courts should strive to resolve cases on their merits whenever possible

[but that] justice also requires that the merits of a particular dispute be placed before

the court in a timely fashion'."Id.  Therefore, we are obliged to ensure that one party's

refusal to comply with the rules does not lead to an unjustified prejudice to those

parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the summary judgment motion filed by defendant Leskwosky.  This unexplained and unexcused failure to respond now compels us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion.

**B.     Dismissal of this Case Is Also Warranted Under Rule 41**

Beyond the requirements imposed by the local rules of this court, Rule 41(b) of the Federal Rules of Civil Procedure also authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness;

(4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.  Recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action against defendant Leskowsky. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delay in this case is attributable to the plaintiff, who has failed to file pleadings, or respond to a court order directing him to fulfill his litigation responsibilities with respect to defendant Leskowsky.

Similarly, the second Poulis factor–the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. The plaintiff's failure to address this motion has resulted in delay in this case with respect to

defendant Leskowsky.  This delay frustrates defendant Leskowsky's efforts to resolve this matter.  In such instances dismissal of the case clearly rests in the discretion of the trial judge.  Indeed, such dismissal orders are frequently issued when a court is confronted by a litigant who fails to timely file and serve pleadings. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007)(failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007)(failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007)(failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  The plaintiff has failed to timely respond to this motion, and comply with the order of this court directing him to respond to this motion.  The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the Plaintiff.  At this juncture, when the plaintiff has failed to respond to a motion or comply with instructions of the Court directing the plaintiff to take specific action in this case, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect a disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders,  lesser sanctions may not be an effective alternative. <u>See, e.g.,</u> <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering an order directing the plaintiff to respond to this motion we have endeavored to use lesser sanctions, but to no avail.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we must consider one other factor, the merits of the parties' claims.  In our view, consideration of this factor also strongly underscores that this action should be dismissed, since as a legal matter the plaintiff has failed to state a valid Eighth Amendment claims against defendant Leskowsky.  Our merits analysis of the currently uncontested summary judgement motion is set forth below.

C.   **Defendant Leskowsky is Entitled To Summary Judgment on Barndt's Eighth Amendment Claims**

1.   **Rule 56– The Legal Standard.**

Defendant Leskowsky has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv.

Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

### 2.   Legal Standards Governing Eighth Amendment "Deliberate Indifference" Claims in a Prison Medical Context.

Liberally construed, the gravamen of Barndt's complaint is that prison officials violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs.  Barndt faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities.  To sustain such a claim, Barndt must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id. at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, a plaintiff is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth

Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied

with the outcome of these services.  Instead, courts have defined the precise burden

which an inmate must sustain in order to advance an Eighth Amendment claim against

a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim,
> as it concerned [a care giver], because [the] allegations merely amounted
> to a disagreement over the proper course of his treatment and thus failed
> to allege a reckless disregard with respect to his . . . care. The standard
> for cruel and unusual punishment under the Eighth Amendment,
> established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104
> (1976), and its progeny, has two prongs: 1) deliberate indifference by
> prison officials and 2) serious medical needs. "It is well-settled that
> claims of negligence or medical malpractice, without some more culpable
> state of mind, do not constitute 'deliberate indifference.' " "Nor does
> mere disagreement as to the proper medical treatment support a claim of
> an eighth amendment violation." . . . . [The inmate] alleged no undue
> delay in receiving treatment and, as the district court noted, the evidence
> he presented established that he received timely care . . . . Although [an
> inmate plaintiff] may have preferred a different course of treatment, [t]his
> preference alone cannot establish deliberate indifference as such second-
> guessing is not the province of the courts.

James, 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess

the propriety or adequacy of a particular course of treatment is disavowed by courts

since such determinations remain a question of sound professional judgment. Inmates

of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting

Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).  Furthermore, it is well-settled

that an inmate's dissatisfaction with a course of medical treatment, standing alone,

does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994).  Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F. App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F. App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

Furthermore, it is equally clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison program supervisor when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only

follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).

Nor can inmates, like Barndt, sustain Eighth Amendment claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in

a prison administrative appeal process does not implicate a constitutional concern.").

As the United States Court of Appeals for the Third Circuit recently observed when

disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of
> Corrections or Superintendents, were named only for their supervisory
> roles in the prison system.  The District Court properly dismissed these
> defendants and any additional defendants who were sued based on their
> failure to take corrective action when grievances or investigations were
> referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
> Cir.1988) (defendant in a civil rights action must have personal
> involvement in the alleged wrongs; liability cannot be predicated solely
> on the operation of *respondeat superior* ); see also Antonelli v. Sheahan,
> 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures
> do not give rise to a liberty interest protected by the Due Process Clause)

Pressley v. Beard, 266 F.App'x 216, 218 (3d Cir. 2008).

In this case, there is no evidence of personal involvement by defendant

Leskowsky in any aspect or facet of Barndt's care and treatment.  Instead, fairly

construed, Barndt's claims against defendant Leskowsky consist of little more than

assertions of *respondeat superior* liability, coupled with dissatisfaction with their

processing of this inmate's past grievances.  These assertions as a matter of law do not

suffice to state a constitutional tort claim.  Therefore, defendant Leskowsky is entitled

to be dismissed from this case.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant Leskowsky's motion for summary judgment (Doc. 127) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified   proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 29th day of August, 2011.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge