## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS BARNDT,** | : | **CIVIL NO. 3:09-CV-1790** |
| | : | |
| **Plaintiff,** | : | **(Judge Caldwell)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by Thomas Barndt, a state inmate who is currently confined at the State Correctional Institution (SCI) Graterford, and was previously housed at SCI Dallas. (Doc. 47)  Barndt has filed a complaint, which he amended on June 21, 2010, originally naming some sixteen correctional and prison medical staff as defendants, including Stanley Bohinski, a physician who allegedly was in charge of medical services at SCI Dallas while Barndt was housed at that prison. (Id.)

In his amended complaint, Barndt alleged that he suffered from a host of maladies including Hepatitis C, an enlarged prostate and a hernia.  Barndt then claims that the various defendants' "deliberate indifference to plaintiff's serious medical needs violated plaintiff's rights, and constituted cruel and unusual punishment under

the 8th and 14th amendments of the U.S. Constitution and plaintiff is entitled to relief."

(Id.)  Specifically, according to Barndt, "[t]he PA DOC has refused to give Plaintiff

Interferon and riberin Treatment for his 14 to 25 yr. old HEPATITUS [sic] C VIRUS

since 1991 BY MAKING EXCUSES THAT HAVE NO VALIDITY.  HEPATITUS

[sic] C causes damage to Plaintiff's Liver and daily fatigue which makes Plaintiff sleep

all night and most of morning. [The defendants] know[] about my serious needs and

ha[ve] failed to respond reasonably to it. HEPATITUS [sic]C affects Plaintiff's daily

activities because of the fatigue.  Plaintiff has lost muscle mass and his gallbladder

because of the Hepatitus [sic] C virus.  A reasonable doctor or patient would consider

Hepatitus [sic] C very worhty [sic] worthy of treatment." (Id.)(capitalization in

original.)   In particular, with respect to Dr. Bohinski, Barndt alleged that this

defendant violated his Eighth Amendment right to be free from cruel and unusual

punishment, by displaying deliberate indifference to his serious medical needs.  As to

the doctor, Barndt's amended complaint specifically alleged that:

> Stanley Bohinski is the Doctor at SCI-Dallas who has the Final Word on
> whether Plaintiff gets the following and has denied Plaintiff of the following:
>
> A. Interferon & riberon Hepatitus [sic] Treatment which causes continueing
> [sic] damage to Plaintiff's Liver and Daily fatigue and contributes to Plaintiff's
> physical health going down.
>
> B. An operation for Plaintiff's Inguinal Hernia which causes daily pain and
> prevent's Plaintiff from exerciseing [sic] and Plaintiff's Physical Health has
> suffered. Plaintiff has lost muscle mass and is down to 129 lbs.

C. An operation to remove part of Plaintiff's enlarged Prostate which is causeing [sic] continueing [sic] damage to Plaintiff's bladder and has Plaintiff urinating 3 to 4 times a night preventing Plaintiff from gettint [sic] a good night's sleep.

Stanley Bohinski has examined me and knows about the seriousness of the above, A,B, and C. And he has failed to respond reasonably to it.

(Id.)

At the outset of this litigation, Dr. Bohinski moved to dismiss this lawsuit. (Doc. 48)  This motion to dismiss was denied without prejudice to a subsequent summary judgment motion since there were disputed factual issues relating to Dr. Bohinski's treatment of Barndt which precluded dismissal of this action at the outset of this litigation. (Doc. 77)  On June 27, 2011, as discovery drew to a close, Dr. Bohinski filed a motion for summary judgment in this matter, (Doc. 131), alleging that there were no genuine issues as to any material fact, and that reasserting his claim he was entitled to judgment as a matter of law in this case.  In connection with this motion, Dr. Bohinski has filed a statement of material facts, (Doc. 134), which carefully details the care and treatment that Barndt has received for an array of medical issues over the years while he has remained in custody. (Id.)

These undisputed material facts reveal that Barndt has an extensive psychiatric record, having been diagnosed with schizophrenia in 1998. (Id., ¶51.)  Barndt himself acknowledges suffering from a series of psychiatric problems. (Id., ¶¶12, 25.)  Barndt

has been on a medication regime to treat this mental illness while in custody, but periodically refuses his psycho-tropic medication, a factor which complicates his medical treatment. (Id., ¶52.)

With respect to the three medical concerns cited by Barndt in this lawsuit–Hepatitis C, an enlarged prostate and an inguinal hernia–prison medical records reveal that Barndt received on-going medical care from Dr. Bohinski while he was housed at SCI Dallas. Thus, for example, with respect to Barndt's enlarged prostate, Dr. Bohinski prescribed a full course of treatment for Barndt. As part of this treatment, Dr. Bohinski ordered routine PSA screening for Barndt and examined his prostate. Dr. Bohinski has also ordered a biopsy of Barndt's prostate to determine whether this inmate has contracted prostate cancer. (Id., ¶¶38-44, 80, 112-117.) These repeated tests and examinations have consistently disclosed that Barndt does not suffer from prostate cancer. (Id.) Having excluded cancer as a diagnosis for this prostate condition, Dr. Bohinski treated Barndt's enlarged prostate with medication and antibiotics. (Id.) This treatment has been successful. Barndt's prostate is no longer enlarged. (Id.) Indeed, Barndt has testified that he no longer believes that he suffers from prostate problems. (Id., ¶42.)

Similarly, Barndt has received on-going medical treatment for his inguinal hernia. (Id., ¶¶26-36, 57, 60, 61, 63, 65-71, 73-77, 84-87, 91.) As part of this treatment, medical staff have determined that Barndt does not require hernia surgery. (Id.)

However, Dr. Bohinski has ordered a hernia belt for Barndt to treat and address this condition. (Id.)  While Barndt was housed at SCI Dallas he was seen on numerous occasions for complaints relating to this hernia. (Id.)   During these medical appointments Dr. Bohinski and other staff would examine the hernia, counsel Barndt on proper use of his hernia belt, and prescribe medication to reduce his discomfort. (Id.) Medical staff have also advised Barndt to avoid exertion which might compound or exacerbate this condition.  (Id.)  This course of treatment remains in effect at SCI Graterford, where Barndt is currently incarcerated.  (Id.)

Finally, as for Barndt's Hepatitis C, while this inmate was diagnosed with Hepatitis C as early as 2006, it was also determined with respect to this disease that Barndt was a "natural responder." (Id., ¶¶53, 108.)  A "natural responder" is a person who tests positive for Hepatitis C but is largely asymptomatic, and does not suffer injury or medical complications from the disease because the patient's body prevents the virus from becoming active and causing injuries. (Id.)

Despite this diagnosis, medical staff, including Bohinski, have continued to carefully monitor and treat Barndt's Hepatitis C. (Id., ¶¶14-24, 53-56, 58-59, 82–83, 88-90, 106-110.)  In the course of this treatment, physicians routinely draw blood and conduct tests to monitor the status of Barndt's Hepatitis C. (Id.)  Doctors have also repeatedly counseled Barndt on his "natural responder" status.  Moreover, in April of 2009, Barndt agreed to undergo a liver biopsy as part of the treatment of this disease.

(Id., ¶89.) While Dr. Bohinski approved this procedure, the procedure also required a medical clearance by the prison psychiatry staff. (Id., ¶90.) In Barndt's case, that psychiatric clearance was not forthcoming because Barndt was found to have engaged in acts of misconduct involving spitting. (Id., ¶¶141-147.) Prison medical staff, however, continue to monitor Barndt's Hepatitis C, and have determined that Barndt does not require current care for this condition. (Id., ¶¶106-111.)

It is against the backdrop of this essentially undisputed medical treatment history that Dr. Bohinski now moves for summary judgment on Barndt's claims that the doctor has been deliberately indifferent to his serious medical needs. (Doc. 131.) This motion has been fully briefed by the parties (Docs. 131-134, 137-139 and 61) and are now ripe for resolution.  For the reasons set forth below, it is recommended that defendant Bohinski's motion for summary judgment be granted.

## II.   Discussion

### A.   Rule 56–The Legal Standard.

The defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Through

summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000),

citing, Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d

Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa.

Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to

avoid summary judgment. Therefore, where a party simply presents inadmissible

hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is

appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL

2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104,

2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug

Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by

. . . denying averments . . . without producing any supporting evidence of the denials."

Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).

Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982)."[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Moreover, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade his litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of

court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11

(M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil

Procedure).  Under the local rules, a party's failure to follow these instructions  and

appropriately challenge the material facts tendered by the defendant means that those

facts must be deemed admitted, since:

> A failure to file a counter-statement equates to an admission of all the
> facts set forth in the movant's statement. This Local Rule serves several
> purposes. First, it is designed to aid the Court in its determination of
> whether any genuine issue of material fact is in dispute. Second, it affixes
> the burden imposed by Federal Rule of Civil Procedure 56(e), as
> recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go
> beyond the pleadings and by her own affidavits, or by the depositions,
> answers to interrogatories, and admissions on file, *designated specific*
> *facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324
> (1986) (internal quotations omitted) (emphasis added). Despite the clear
> language of the rule, the important purposes it serves, and the
> voluminous record in this case, [p]laintiff has not submitted the requisite
> counter-statement. All facts included in [d]efendant's statement must
> therefore be deemed admitted.

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr.

5, 2007) (emphasis in original).

### B.  <u>Legal Standards Governing Eighth Amendment "Deliberate Indifference" Claims in a Prison Medical Context.</u>

In this case, the gravamen of Barndt's complaint is that prison officials have

violated Barndt's rights under the Eighth Amendment to the United States

Constitution by displaying "deliberate indifference" to this inmate's medical needs,

by neglecting to properly treat his hernia, Hepatitis C and enlarged prostate.  Barndt

faces an exacting burden in advancing this Eighth Amendment claim against prison

officials in their individual capacities.  To sustain such a claim, Barndt must plead

facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be,
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825,
> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and
> citations omitted).  In prison conditions cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety." Id. "Deliberate
> indifference" is a subjective standard under Farmer-the prison official-
> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the

courts have held that a mere generalized knowledge that prisons are dangerous places

does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x

743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff

complained about cellmate who had a history of psychological problems, but where

plaintiff failed to articulate a specific threat of harm during the weeks prior to an

attack.)  In short, when "analyzing deliberate indifference, a court must determine

whether the prison official 'acted or failed to act despite his knowledge of a substantial

risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner

plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Barndt is required to allege facts that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of

resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate

received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.   Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F. App'x. at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment).  Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F. App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F. App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F. App'x 390 (3d Cir. 2007)(same), since "the

exercise by a doctor of his professional judgment is never deliberate indifference."

Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

**C.    Application of the Eighth Amendment to Prisoner Medical Complaints Regarding Treatment of Hepatitis C**

It is a stark medical reality of life in our prisons that ailments like Hepatitis C, are chronic and endemic in certain components of the inmate population. This prison medical fact of life, in turn, inspires a legal truth: When considering Eighth Amendment claims, like those advanced by Barndt, based upon an alleged failure to treat an inmate's Hepatitis C we do not write upon a blank slate. Quite the contrary, numerous courts have considered the application of the Eighth Amendment in this specific legal-medical context.

Several guiding principles emerge from these cases. First, as a medical matter: "Hepatitis C is one of six identified hepatitis viruses-the others are A, B, D, E and G. All cause the liver to become inflamed, which interferes with its ability to function. Hepatitis C is generally considered to be among the most serious of these viruses. Over time, a hepatitis C infection can lead to liver cancer, liver failure or cirrhosis, an irreversible and potentially fatal scarring of the liver." Lee v. Beard, No. 03-1026, 2008 WL 744736, *3 (M.D.Pa. March 18, 2008). Given the severity of its symptoms, and its potential for serious and fatal injuries to those afflicted by this disease, it is clear that Hepatitis C constitutes the type of "serious medical need" which triggers

Eighth Amendment scrutiny in a corrections context. See, e.g., Henry v. Maue, No. 06-1439, 2008 WL 5188834, *3 (W.D. Pa, Dec. 10, 2008)(Hepatitis C constitutes a serious medical need); Henry v. Wilson, No. 06-1439, 131164, *4 (W.D. Pa. Jan. 9, 2008)(same); Christy v. Robinson, 216 F.Supp.2d 398, 413 (D.N.J. 2002)(same). Because Hepatitis C is a grave medical concern, and constitutes a serious medical need, it follows that a complaint which adequately alleges deliberate indifference by prisoner medical staff to an inmate's Hepatitis C cannot be summarily dismissed at the outset of a lawsuit. See Henry v. Wilson, No. 06-1439, 131164 (W.D. Pa. Jan. 9, 2008) (denying Rule 12(b)(6) motion relating to Eighth Amendment deliberate indifference claim concerning Hepatitis C treatment); Thomas v. Arias, No. 06-291, 2007 WL 210097 (E.D. Pa. Jan. 23, 2007)(same).

Yet, while such claims cannot be routinely disposed of as a matter of law on a motion to dismiss, the principles which guide analysis of Eighth Amendment medical claims generally apply with equal force to inmate medical claims premised on prison medical treatment of Hepatitis C. Thus, where it is undisputed as a factual matter that prison medical staff have been providing forms of treatment to an inmate, and the inmate's complaint in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will ultimately fail as a constitutional claim under § 1983. See, e.g., Hodge v. U.S. Department of Justice, 2010 WL 1141387 (3d Cir. Aug. 2, 2010)(affirming summary

judgment on inmate 8th Amendment claim relating to treatment of Hepatitis C); Palmer v. Carroll, 640 F.Supp 2d. 542 (D. Del. 2009)(summary judgment in favor of defendants on inmate 8th Amendment claim regarding Hepatitis C treatment); Moshier v. United States, No. 05-180, 2007 WL 1703536 (W.D. Pa. June 11, 2007)(same); Jordan v. Delaware, 433 F.Supp.2d. 433 (D.Del. 2006)(same); Christy v. Robinson, 216 F.Supp.2d 398, 413 (D.N.J. 2002)(same).  In particular, when considering inmate Eighth Amendment claims brought by Pennsylvania state prisoners complaining about the Hepatitis C treatment afforded to them in prison, courts have often held in favor of defendants when the undisputed facts show that the inmates were treated in accordance with the Department of Corrections' Hepatitis C treatment protocol, finding that compliance with this treatment protocol either rebuts any claim of deliberate indifference to serious medical needs; Henry v. Maue, No. 06-1439, 2008 WL 5188834 (W.D. Pa.  Dec. 10, 2008), Lee v. Beard, No. 03-1026, 2008 WL 744736 (M.D.Pa. March 18, 2008), or concluding that prison officials who complied with this protocol were entitled to qualified immunity from damages. Josey  v. Beard, No. 06-265, 2009 WL 1858250 (W.D.Pa. June 29, 2009).

Thus, where as here, it is undisputed that an inmate's Hepatitis C has been carefully monitored by prison medical staff, and any delay in more aggressive treatment has been a function of the need to complete psychological clearances for the inmate, it is well-settled that prison officials are entitled to judgment in their favor as

a matter of law on inmate Eight Amendment claims.  As the United States Court of

Appeals for the Third Circuit explained recently when affirming a summary judgment

in a similar case:

> The standard for evaluating a prisoner's deliberate indifference claim is highly deferential to the medical practitioners' professional judgment. "Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.' " Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977)). A prisoner does not have the right "to choose a specific form of medical treatment." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir.2000).  Lasko's deliberate indifference claim hinges on the premise that defendants refused to treat him for hepatitis C for eighteen months after he arrived at FCI-Schuylkill. As the District Court pointed out, however, Lasko's medical treatment, including extensive evaluations assessing the appropriate course of treatment for his hepatitis C condition, commenced immediately upon entering the facility.  Defendants did not approve Lasko to begin a interferon and ribavirin regimen until he had undergone physical and psychological examinations, extensive laboratory testing, and several counseling sessions, but this approach is entirely consistent with the BOP Guidelines for hepatitis C treatment. Lasko has not adduced any evidence that Dr. Hendershot-or any of the other defendants-failed to treat Lasko's chronic hepatitis C condition. The District Court did not err in granting summary judgment on Lasko's Eighth Amendment claim.

Lasko v. Watts, 373 F.App'x 196, 203 (3d Cir. 2010).

**D.    Application of the Eighth Amendment to Prisoner Medical Complaints Regarding Hernia Treatment**.

Similar deference is called for when assessing inmate Eighth Amendment claims like the claims advanced by Barndt relating to his hernia treatment.  At bottom, this aspect of Barndt's Eighth Amendment claim entails a dispute between an inmate and his physicians regarding the necessity for hernia repair surgery, and the adequacy of other, less invasive forms of treatment.   In this context, where an inmate's complaints are nothing more that a dispute between a prison and health care providers regarding alternate courses of treatment for a hernia, courts have routinely refused to cast this treatment dispute as an issue of constitutional dimension. See, e.g., Rodriguez v. Secretary Pennsylvania Dep't of Corrections, No. 10-3134, 2011 WL 3555424 (3d Cir. Aug. 12, 2011)(no deliberate indifference when inmate provided hernia belt); Winslow v. Prison Heath Service, 406 F.App'x 671 (3d Cir. 2011)(no deliberate indifference when inmate provided hernia belt);Guiddy v. Terhune, 90 F.App'x 592 (3d Cir. 2004).[1]

_____

[1] See also, Palazon v. Secretary for Department of Corr., 361 F. App'x 88-89 (11th Cir. 2010); Bisgeier v. Michigan Department of Corrections, 2010 U.S. App. LEXIS 11724 (6th Cir. 2010);  Gaddis v. Walker, 2010 U.S. Dist. LEXIS 31519, 37-38 (C.D. Ill. 2010); Eddie Lee Banks v. SFRC Med. Dept. Officials, 2010 U.S. Dist. LEXIS 54126 (S.D. Fla. 2010); Thomas v. Westfall, 2009 U.S. Dist. LEXIS 103872 (S.D.W. Va. 2009); Breach v. Prison Health Services, Inc., 2009 U.S. Dist. LEXIS 114976 (M.D. Ala. 2009); McArty v. Correctional Medical Services, Inc., 2008 U.S. Dist. LEXIS 13935 (E.D. Ark. 2008).

### E.   Dr. Bohinski Is Entitled to Summary Judgment on These Eighth Amendment Claims

Judged against these standards, Dr. Bohinski is plainly entitled to summary judgment in his favor on these inmate Eighth Amendment claims.  Here, it is entirely undisputed that the plaintiff received extensive, on-going medical treatment for these various conditions while housed at SCI Dallas.  During this time Barndt was examined and treated on dozens of occasions.  He received a wide array of treatments including medications, PSA screening, blood tests, a hernia belt, counseling and other care.  All of this on-going care is undisputed in the factual record, and is fatal to Barndt's claim that Dr. Bohinski was deliberately indifferent to his medical needs.  Thus, in its present posture, Barndt's Eighth Amendment claims should be dismissed since those:

> [A]llegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials; and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).

In addition, we note that Dr. Bohinski has asserted a defense of qualified immunity in his answer to Barndt's complaint this case. (Doc. 80, p.9)  Thus, even if Barndt had stated a colorable claim for any actions relating to his medical care, Dr. Bohinski would nevertheless be entitled to qualified immunity from these claims for damages.  In order to establish a civil rights claim Barndt must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Barndt is entitled to recover damages from these public officials.  Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, —U.S.—, 129 S. Ct. 808, 815 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 129 S. Ct. at 815

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 129 S. Ct. 808; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific

conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 129 S. Ct. at 820, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id.  Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity.  Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law

for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, caselaw has repeatedly upheld the constitutionality of medical choices identical to those made here by Dr. Bohinski relating to the care and treatment of Barndt's Hepatitis C, rejecting inmate Eighth Amendment challenges to this medical care. See, e.g., Lasko v. Watts, 373 F. App'x 196, 203 (3d Cir. 2010); Hodge v. U.S. Department of Justice, 2010 WL 1141387 (3d Cir. Aug. 2, 2010)(affirming summary judgment on inmate 8th Amendment claim relating to treatment of Hepatitis C); Palmer v. Carroll, 640 F.Supp 2d. 542 (D.Del. 2009)(summary judgment in favor of defendants on inmate 8th Amendment claim regarding Hepatitis C treatment); Moshier v. United States, No. 05-180, 2007 WL 1703536 (W.D. Pa. June 11, 2007)(same); Jordan v. Delaware, 433 F.Supp.2d. 433 (D.Del. 2006)(same);Christy v. Robinson, 216 F.Supp.2d 398, 413 (D.N.J. 2002)(same).  Federal courts have also routinely held that medical disputes between physicians and prisoners over alternate hernia treatment plans do not state an Eighth Amendment claim. See, e.g., Rodriguez v. Secretary Pennsylvania Dep't of Corrections, No. 10-3134, 2011 WL 3555424 (3d Cir. Aug. 12, 2011)(no deliberate indifference when inmate provided hernia belt); Winslow v. Prison Heath Service, 406 F. App'x 671 (3d Cir. 2011)(no deliberate indifference when inmate provided hernia belt);Guiddy v. Terhune, 90 F.App'x 592 (3d Cir. 2004).

Given the state of the law in this field, which consistently rebuffed inmate Eighth Amendment challenges to the precise type of care afforded to Barndt, Dr. Bohinski simply could not have recognized that his treatment of Barndt's medical complaints would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore, Dr. Bohinski is entitled to qualified immunity on this claim.[2]

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED, that defendant Bohinski's motion for summary judgment (Doc. 131) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified   proposed findings or

---

[2]While the defendants have not separately argued qualified immunity in this motion, they have raised this defense in their answer to Barndt's complaint, (Doc. 80) and this Court is entitled to address this defense *sua sponte*, when appropriate. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 31st day of August, 2011.

*S/Martin C. Carlson*

Martin C. Carlson

United States Magistrate Judge